THE PEOPLE *ex rel.* Frank W. Solon, Appellee, *vs.* ELTON LOWER *et al.*—(HERBERT E. FLEMING, Appellant.)

*Opinion filed April 18, 1912—Rehearing denied June 6, 1912.*

1. PRACTICE—*proper practice where party is denied leave to intervene in lower court.* A party who is denied leave to intervene, as a citizen and tax-payer, in a *certiorari* proceeding in the circuit court against the civil service commissioners should preserve his rights by a bill of exceptions and then appeal to or sue out a writ of error from the Appellate Court.

2. SAME—*the courts of review cannot review judgments upon ex parte affidavits.* The Supreme Court and Appellate Court, as courts of review, act only upon certified transcripts of the proceedings of the lower courts, and cannot review and set aside judgments upon *ex parte* affidavits of strangers to the record in the lower courts.

3. SAME—*when tax-payer cannot prosecute writ of error to review judgment in certiorari proceeding.* Where the question involved in a *certiorari* proceeding in the circuit court to review the record of the civil service commissioners is whether one person or another shall occupy an office created by law, a citizen and tax-payer has no such immediate interest as entitles him to sue out a writ of error after the civil service commissioners and the corporation counsel have abandoned their appeal from the judgment of the circuit court quashing the proceedings of the civil service commissioners.

4. SAME—*who may sue out writ of error.* To entitle a party to sue out a writ of error he must be a party or privy to the record, or be one who is injured by the judgment or will be benefited by its reversal or competent to release errors.

5. SAME—*the law department of city has power to determine whether litigation shall be abandoned.* Whether an appeal from a judgment of the circuit court quashing the proceedings of the civil service commissioners of a city shall be perfected or abandoned is a question to be determined by the law department of the city acting according to their best judgment, and unless it is apparent that the rights of the city are being fraudulently sacrificed the court should not permit a citizen and tax-payer to assume control of the litigation by allowing him to prosecute the appeal in the name of the commissioners. (*Roby* v. *City of Chicago,* 215 Ill. 604, applied.)

6. CERTIORARI—*what necessary to enable party to sue out writ of certiorari.* To entitle a party to sue out a writ of *certiorari* he

must have been a party to the proceeding which he seeks to have reviewed and must have an interest in that proceeding which is direct and immediate; and if he could not have commenced the proceeding he has no standing to control it, either in the trial court or a court of review, after it is commenced by others.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding.

WILLIAM B. HALE, FRANCIS X. BUSCH, and HENRY SCHOFIELD, for appellant.

GEORGE W. MILLER, and GALE BLOCKI, for appellee.

WILLIAM H. SEXTON, Corporation Counsel, (JOHN W. BECKWITH, of counsel,) for Elton Lower *et al.*

Mr. JUSTICE HAND delivered the opinion of the court:

On April 12, 1910, Frank T. Fowler, superintendent of streets in the city of Chicago, filed charges with the civil service commissioners of the city against Frank W. Solon, assistant superintendent of streets. On April 13 a copy of the charges was served on Solon and a trial was had before the civil service commissioners, which resulted on May 4, 1910, in a finding and order that Solon be discharged, under which order he was discharged. A petition for a rehearing before the commissioners was filed and denied, and on April 17, 1911, Solon filed a petition in the circuit court of Cook county against said civil service commissioners for a writ of *certiorari.* The writ was issued and the civil service commissioners filed a return thereto. The case was tried on May 24, 1911, and a judgment was entered quashing the proceedings before the civil service commissioners, from which judgment the civil service commissioners prayed an appeal to the Appellate Court for the First District, which was allowed. Thereafter, on September 2, 1911,

Herbert E. Fleming, a citizen and tax-payer of the city of Chicago, filed a motion in the circuit court asking leave to file a petition in that court to set aside the judgment entered on May 24, 1911, which motion was denied on September 30, 1911. The civil service commissioners did not perfect the appeal prayed to the Appellate Court, and on October 4, 1911, Fleming filed a transcript of the record of the circuit court proceedings in the *certiorari* case in the Appellate Court, together with a motion seeking, as a citizen and tax-payer of Chicago, to be allowed to prosecute the appeal in the name of the civil service commissioners, or, in the alternative, that he have leave to sue out of the Appellate Court a writ of error to review the record of the judgment of the circuit court in the *certiorari* proceeding. With the motion was filed what was said to be a transcript of the proceedings before the civil service commissioners, together with an affidavit of Fleming. November 8, 1911, the Appellate Court denied Fleming leave to prosecute said appeal or to sue out a writ of error, and on cross-motion struck from the files the transcript of the record of the proceedings in the circuit court and the claimed transcript of the proceedings before the civil service commissioners and the affidavit of Fleming, and the record is brought to this court by appeal upon a certificate of importance by Fleming to review the judgment of the Appellate Court.

The sole question presented for review in this court is, had Herbert E. Fleming, as a citizen and tax-payer, the right to perfect and prosecute the appeal of the civil service commissioners to the Appellate Court from the judgment of the circuit court, or to sue out a writ of error from the Appellate Court in his own name or in the name of the civil service commissioners, to review the judgment of the circuit court in the *certiorari* proceeding?

It is first urged that the Appellate Court should have taken jurisdiction of the appeal on the motion of Fleming as a citizen and tax-payer, or permitted him to sue out a

writ of error, on the ground that the record of the civil
service commissioners and the affidavit of Fleming filed in
the Appellate Court show that the judgment entered in the
circuit court in the *certiorari* proceeding quashing the pro-
ceedings before the civil service commissioners was caused
to be entered by the circuit court in consequence of the bad
faith and collusion of Frank W. Solon and the civil service
commissioners, or by their attorneys. In considering this
contention it must be borne in mind that Fleming did not
prosecute an appeal from the judgment of the circuit court
denying him leave to intervene in the circuit court and have
the judgment of the circuit court quashing the proceedings
before the civil service commissioners set aside and that he
be allowed to be heard in that proceeding, but it is a mo-
tion entered by him in the Appellate Court asking that he
be permitted to perfect the appeal of the civil service com-
missioners or to sue out a writ of error in their name or in
his own name to review the judgment of the circuit court
in the *certiorari* proceeding, which it is sought to have re-
viewed in this court. It would, we think, have been the
proper practice, if Fleming had the right, as a citizen and
tax-payer, to be heard in the *certiorari* proceeding, for
him to have intervened in that proceeding, and if he were
denied such leave and desired to have the Appellate Court
review the judgment of the circuit court which denied him
leave to be heard in the *certiorari* proceeding, to have pre-
served his rights by proper exceptions and then appealed
to or sued out a writ of error from the Appellate Court,
when he could have presented to that court, sitting as a
court of review, a record upon which his right to be heard
upon the question whether the circuit court was being im-
posed upon by the bad faith and collusion of the parties
to the *certiorari* proceeding could have been determined
by the Appellate Court, and not have gone to the Appel-
late Court, as he did, and in that court sought to im-
peach the return of the civil service commissioners to the

writ of *certiorari* by his *ex parte* affidavit to the effect that the secretary of the civil service commissioners had stated to him facts which tended, in his judgment, to show that the return filed by the civil service commissioners to the writ of *certiorari* was collusive and fraudulent. The Appellate and Supreme Courts of this State are courts of review and determine causes brought into review in those courts only upon certified transcripts of the proceedings which take place in the inferior courts in this State, and those courts are not clothed with the power to set aside and vacate the judgment of the lower courts of the State on the *ex parte* affidavits of strangers to the record in the lower courts. To ingraft a practice of that kind upon the appellate practice in this State would be to render all judgments of the lower courts of this State liable to be set aside by the courts of review upon affidavits filed in those courts by strangers to the record, that the judgments of the inferior courts have been collusively entered. This would be revolutionary and such practice cannot be sustained by this court. If, however, it were permissible to entertain *ex parte* affidavits in courts of review as a basis for vacating the judgments of the trial courts of the State on the ground that they were collusively entered, the affidavit filed in this case does not show collusion. We therefore conclude the first contention of the appellant is without merit and must be overruled.

It is next argued that the record filed in this court by Fleming shows upon its face that the judgment entered by the circuit court in the *certiorari* proceeding is erroneous, and for that reason it is urged the motion of Fleming should have been allowed. The question of the validity of the judgment in the *certiorari* proceeding was not presented to the Appellate Court for review and is not presented for review to this court, and the validity of the judgment entered by the circuit court in the *certiorari* proceeding is not here involved. The only question here involved is, did

Fleming have the right to take charge of the *certiorari* pro-
ceeding in the Appellate Court, as a citizen and tax-payer,
after the appeal had been abandoned by the civil service
commissioners and the corporation counsel of the city of
Chicago, who is the legal adviser of the civil service com-
missioners, and carry on that litigation in the Appellate
Court for the benefit of himself and the other citizens and
tax-payers of the city of Chicago and against the objec-
tion of the civil service commissioners and the corporation
counsel of the city, and did the Appellate Court err in de-
clining to permit him so to do? For the purposes of the
motion by Fleming in the Appellate Court it was wholly
immaterial whether the judgment of the circuit court in the
*certiorari* proceeding was erroneous upon its face or not.

We next come to the question, did Fleming have the
right to prosecute the said appeal or sue out a writ of error
to review the judgment in the *certiorari* proceeding? In
*Roby* v. *City of Chicago,* 215 Ill. 604, a bill in chancery
was filed by Roby in the circuit court of Cook county for
the purpose of controlling the defense of certain litigation
which was proceeding in the United States courts in Chi-
cago with reference to the rights of the traction system of
that city in the streets of the city, on the ground that the
law department of the city was not properly guarding the
interests of the city. In disposing of the right of the law
department of the city to represent the city and control the
litigation of the city, this court, on page 606, said: "The
city of Chicago has a law department, which is charged
with the duty of representing said city in court in all
suits at law, in equity or otherwise, which may be brought
against it, and for a court of chancery, upon a bill filed
for that purpose, to undertake to determine, at the suit
of a tax-payer, what defense should be interposed in suits
brought against the city, would be to usurp the functions
of the law department of the city and would lead to hope-
less and endless confusion. * * * The contention, there-

fore, between the appellant and the city is narrowed to this: that the appellant and the law officers of the city differ as to the most effectual manner of defending said suits on behalf of the city in the United States circuit court, and the appellant asks the court to decide that his theory of the defense of said suits is correct and require the law officers of the city to proceed with the defense of said actions in accordance with the view of appellant. In the litigation in the United States circuit court, the same as in this case and all others, the city must be represented by its law officers, and they must be permitted, without interference from the courts, by injunction or otherwise, to represent the city in such manner as in their judgment will best subserve and protect its interests. If the people of Chicago are not satisfied with the manner in which their interests are protected by the law department of that city, the law has pointed out a method whereby they may change that department; but each citizen, resident and tax-payer can not go into a court of chancery and obtain a decree commanding the said law department what sort of a defense it shall interpose in the numerous actions which may be brought against the city, every time the city is sued."

It is urged that the *Roby case* is not in point because, it is said, the litigation referred to in that case had not been abandoned but was being carried on in the courts at the time the bill was filed, while it is urged in this case the litigation had been abandoned. It is, at times, very desirable that litigation should be avoided and at others that litigation commenced should be abandoned, and we think the question whether pending litigation should be settled is necessarily one upon which the law department of the city must pass, and that in no case, unless it is apparent that the rights of a city are being fraudulently sacrificed, (which does not appear to be the case here,) should the court step in and in opposition to the desire of the city officials and the law department of a city assume to control the litiga-

tion of the city. We think the principle announced in the
*Roby case* is applicable to the case at bar, and that the Ap-
pellate Court did not err in declining to permit Fleming to
supersede the civil service commissioners and the law de-
partment of the city of Chicago in determining the question
whether or not the judgment of the circuit court in the
*certiorari* proceeding should be reviewed by the Appellate
Court, but think that court properly left the determination
of that question to the civil service commissioners and the
law department of the city, as represented by the corpora-
tion counsel.

In *People* v. *County of Vermilion*, 210 Ill. 209, it was
held to be well established by authority that to entitle one
to sue out a writ of *certiorari* he must have been a party to
the proceeding of which he seeks a review and must have
an interest in the proceeding that is direct and immediate.
Fleming was not a party to the proceeding before the civil
service commissioners, and we are of the opinion he had no
interest in that proceeding that was direct and immediate.
It must be conceded that where public funds are illegally
disbursed the tax-payers of a municipality are injured, be-
cause to that extent must other public funds be contributed
by them to meet the necessities of the municipality, which
funds must be raised by taxation. But no such situation
is presented here. The *certiorari* proceeding neither took
a dollar out of nor put a dollar into the pockets of the tax-
payers of the city of Chicago. The office involved in this
litigation existed under the law. The office will be occupied
by someone and such occupant will draw the salary of the
office, and so far as the tax-payers are concerned it makes
no difference to them whether the salary is paid to Solon
or to someone else. There is no claim here that the salary
of the office was being paid twice. The only question is
who shall hold the office, and that question, from a financial
standpoint, does not affect the tax-payers of the city, and
the fact that a tax-payer would prefer that someone other

than Solon should hold the office does not give such tax-payer an interest in the question to be decided in the *certiorari* proceeding, which is direct and immediate, hence a tax-payer has no standing in the present litigation which will authorize him to insist that the judgment of the circuit court be reviewed by the appellate tribunals of this State.

It is, we think, plain that the Appellate Court did not err in declining to permit Fleming to perfect and prosecute the appeal which had been prayed by the civil service commissioners, nor do we think he occupies any more favorable position with reference to his right to sue out a writ of error. At the common law the person entitled to a writ of error must be a party or privy to the record, or be one who is injured by the judgment or who will be benefited by its reversal or is competent to release errors. (*Anderson* v. *Steger,* 173 Ill. 112; *Winne* v. *People,* 177 id. 268; *White Brass Castings Co.* v. *Union Metal Manf. Co.* 232 id. 165.) Fleming was not a party to the record. He was not a privy to the record. He was not injured by the judgment of the circuit court nor will he be benefited by the reversal of the judgment nor could he release error upon the record, hence, within the doctrine of the foregoing authorities, he could not sue out a writ of error to review the judgment of the circuit court in the *certiorari* proceeding.

It is apparent, under the rule announced in *People* v. *County of Vermilion, supra,* that Fleming could not have sued out the writ of *certiorari* which was issued by the circuit court, as he had no interest, as a citizen or tax-payer, which was direct and immediate in the proceeding which was sought to be reviewed, nor was he a party to the record made by the civil service commissioners. If he could not have commenced the *certiorari* proceeding, clearly he could not control that proceeding after it was commenced, either in the trial or Appellate Court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*