American Surety Company et al., Appellants, v.
Paul F. Jones, Appellee.

Gen. No. 9,355.

GILLESPIE, BURKE & GILLESPIE, of Springfield, for appellants; EDMUND BURKE and GEORGE B. GILLESPIE, both of Springfield, of counsel.

GEORGE F. BARRETT, Attorney General, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

On July 26, 1941, the plaintiffs, seventeen in number, filed in the circuit court of Sangamon county their petition, herein referred to as a petition for review, basing their right to file the same and for relief on the Illinois Insurance Code (Ill. Rev. Stat. 1941, ch. 73 [Jones Ill. Stats. Ann. 66.199(1) *et seq.*]), particularly on secs. 114 and 407 thereof.

The circuit court allowed the motion of defendant to strike such petition and dismissed the same on the ground that the plaintiffs were not such companies as might maintain a petition for review under such sec. 407. This appeal is from such order of the circuit court.

The petition for review alleged that at all of the times in question the plaintiffs were insurance companies organized and existing under the laws of States other than Illinois, duly licensed and authorized to conduct the business of surety insurance in this State,

and that their business in this State is large and extensive.

The petition for review further alleged that on June 7, 1941, the plaintiffs filed with the defendant as director of insurance, hereafter styled "Director," their verified petition; that such petition of June 7th, in addition to alleging the foregoing facts, averred and set forth: That on July 1, 1940, the director issued to underwriters at Lloyds, hereafter styled "Lloyds,"— (having its home office and principal place of business in London, England), a purported certificate of authority to transact surety insurance business in this State, that under the conditions prescribed by sec. 114 of such code, Lloyds, upon payment of the annual privilege tax imposed by the code and without application therefor, would obtain a certificate of authority to transact surety insurance business in this State until June 30, 1942; that petitioners would be aggrieved by the issuance of such certificate in this that Lloyds had not, as required by the code, made and maintained in this State deposits, and maintained in this or any other State in which Lloyds was authorized to transact business, cash or securities.

The petition for review further alleged that the petition of June 7th asked that the petitioners therein be heard by the director in the matter of the issuance to Lloyds of such certificate of authority to transact business in this State during the period beginning July 1, 1941.

The petition for review further alleged that on July 1, 1941, the director issued his order or decision in which he advised the plaintiffs that it was his opinion that Lloyds had duly qualified and would be entitled to a certificate of authority to transact its business in this State, that the issuance of such certificate to a company "is a matter of compliance with the law by the applying company," and that "other companies that may be licensed to transact the same kind of business that the applying company is seeking to transact are

not proper parties to be heard on the application of such applying company.''

The petition for review further alleged that on July 1, 1941, the director issued a purported certificate of authority to Lloyds to transact such surety insurance business, that the plaintiffs were aggrieved by such order and decision of the director and by the issuance of such certificate in this, that the same was issued without requiring Lloyds to maintain in this or any other State cash and securities, or make deposits of underwriters, or to file a copy of a trust or other agreement, as required by the code.

The petition for review prayed that such order and decision of the director be set aside and that the certificate of authority so issued to Lloyds be declared of no force and effect.

The material parts of such code are as follows:

Section 114,

''(1) The Director shall renew for one year the certificate of authority of a foreign or alien company on the first day of July of the calendar year following the calendar year in which it is admitted to transact business in this State and annually thereafter, without application by the company, upon payment of the annual privilege tax imposed by this Code, if any, provided the Director is satisfied that

''(a) none of the facts specified in this article as grounds for revoking a certificate of authority exists; and

''(b) the company is complying with the conditions for admission, except for surplus requirements in excess of those which similar domestic companies transacting the same kind or kinds of business are required to maintain.

''(2) Except in case of non-payment of taxes, the Director shall give notice of his intention to refuse to renew the certificate of authority of a foreign or alien company and the grounds therefor at least twenty

days before the end of the term for which the existing certificate was issued, and, the company shall be given an opportunity for a hearing before the end of such term.''

Section 201,

''No order, judgment or decree enjoining, restraining or interfering with the prosecution of the business of any company, . . . shall be made or granted otherwise than upon the petition of the Director . . . as provided in this article, . . . .''

Section 407,

''(1) Any order or decision made, issued or executed by the Director, . . . whereby any company or person is aggrieved, shall be subject to review by the Circuit Court of Sangamon County or the Circuit or Superior Court of the county in which the principal office in this State of the company aggrieved by such order or decision is located, or where the person so aggrieved resides. A petition for the review of the action of the Director shall be filed within thirty days from the date of the service of a copy of the order or decision made by the Director upon such company or person. A copy of such petition for review as filed with and certified to by the Clerk of such Court shall be served upon the Director or in his absence upon some one in active charge of the Department of Insurance within five days after the filing thereof. If such petition for review is not filed within the said thirty days the parties aggrieved shall be deemed to have waived the right to have the merits of the order or decision reviewed and there shall be no trial of the merits thereof by any court to which application may be made by petition or otherwise, to enforce or restrain the enforcement of the same.

'' . . .

''(3) The court shall have jurisdiction to affirm or to set aside the order or decision of the Director and to restrain the enforcement thereof.''

Defendant contends that because of the provisions of sec. 201 this proceeding cannot be maintained by plaintiffs. In the view we take of the case we do not consider it necessary to pass upon or discuss the effect of such section.

Plaintiffs contend the director issued a certificate to Lloyds without authority because Lloyds had failed to comply with certain requirements of the code as set out in their petition, that they were aggrieved by the issuance of such certificate because it deprived them of the right to be free from competition of a company that had not complied with the provisions of the code, and that this right to be free from such competition gave them a direct interest in the matter of the issuance of such certificate of authority to Lloyds. Their interest, they contend, entitled them to do two things, first, to intervene and be heard before the director as prayed for in their petition, and, second, if unsuccessful in opposing the certificate to Lloyds, to file a review under sec. 407.

In determining the questions at issue, it is necessary to consider the subject matter presented to the director for decision. He was called upon to renew Lloyds' certificate of authority under the provisions of sec. 114 of the code. No language in such section, either by express inclusion or by fair implication or otherwise, authorizes a rival insurance company to intervene or be heard in the matter of the issuance of a renewal of a certificate of authority held by another company. The procedure for renewing a certificate of authority is simple and explicit. If the director is satisfied that a company, having a certificate the renewal of which is under consideration, has complied with the conditions required, then upon payment of the annual privilege tax he renews such certificate without application by such company. It is only in case the director intends to refuse to renew such a certificate that any notice or hearing is required. In such case the notice is to be

given and the hearing granted only to the company having a certificate which the director intends to refuse to renew. The language of sec. 114 indicates that no other party to the proceeding of renewal is contemplated.

The plaintiffs not having any direct interest or concern in the proceedings of the director in issuing to Lloyds a renewal certificate under sec. 114, the question still remains as to whether or not they can be said to be aggrieved within the meaning of sec. 407.

As we construe sec. 407, the only company or person entitled thereunder to file a petition for review is a company or person whose rights are directly passed upon and affected by such order or decision of the director, and in this case the only person or company directly affected was Lloyds. We believe that the language in sec. 407, ''Any order or decision . . . whereby any company or person is aggrieved, shall be subject to review by the Circuit Court of Sangamon County or the Circuit or Superior Court of the county in which the principal office in this State of the company aggrieved by such order or decision is located, or where the person so aggrieved resides,'' indicates a definite person or company is contemplated as the person or company directly aggrieved, as distinguished from all companies and persons indirectly even though substantially affected or aggrieved. Section 407 provides that the time for filing a petition for review shall expire 30 days ''from the date of the service of a copy of the order . . . upon such company or person.'' Manifestly this language indicates or contemplates that a copy of the order of the director shall be served by the director upon the company or person having a matter pending for disposition before such director, and not upon any other company or companies that might be indirectly interested in or affected by such order. It will be noted that the last sentence of par. 1, sec. 407 provides ''That if such

petition for review is not filed within thirty days the parties aggrieved shall be deemed to have waived the right to have the merits of the order or decision reviewed, and there shall be no trial on the merits thereof by any court to which application may be made by petition or otherwise to enforce or restrain the enforcement of the same.'' This language, we believe, indicates that the party aggrieved is the party directly affected by and served with such copy of the order of the director, and not other parties, such as the plaintiffs, who are not required to have and might not in fact have any notice of the action of the director.

The evident purpose of sec. 407 was to give a company directly affected by the decision of the director a quick and inexpensive judicial review. When the legislature used the word ''aggrieved,'' it did not intend to include every prejudice however remote or incidental which might follow from a decision of the director. In *Glos v. People*, 259 Ill. 332, the court defined the word ''aggrieved'' in the following language: ''A person is prejudiced or aggrieved, in the legal sense, when a legal right is invaded by the act complained of or his pecuniary interest is directly affected by the decree or judgment. . . . 'Aggrieved' means having a substantial grievance; a denial of some personal or property right.''

The director's order in renewing Lloyds' certificate did not directly, in our opinion, affect the interests of the plaintiffs. None of their certificates of authority were involved in the decision made by the director. No order or decision was directed against any of them. The prejudice which might result to plaintiffs from competition by Lloyds was at most an indirect result of the director's decision and of his issuance of the renewal certificate.

The filing of a petition for review under sec. 407, although strictly not an appeal, is in the nature of an appeal or writ of error. Its purpose is one of review. It has been generally held that before a person not a

party to the record can sue out a writ of error, he must have a direct interest in the subject matter of the litigation which is prejudiced or aggrieved by the judgment sought to be reviewed. The principles governing such cases, we believe, are applicable here in interpreting the language of sec. 407. Mere injury or prejudice of some kind is not the test.

In *White Brass Castings Co. v. Union Metal Mfg. Co.,* 232 Ill. 165, stockholders of a corporation who were not parties to a suit resulting in a judgment against a corporation, attempted to sue out a writ of error in their own names to reverse the judgment. The court held that the stockholders were not shown by the record to be prejudiced by the decree; that the prejudice which will authorize the suing out of a writ of error must be such that the person suing out the writ takes or loses something directly by the judgment or decree. In referring to the interest of the stockholders in the subject matter of litigation, the court said: "The indirect interest arising from the fact that the value of their stock may be increased or diminished by a judgment or decree against the corporation does not authorize each one, or a majority or all of the stockholders, in their own names, to prosecute a writ of error to reverse such judgment or decree."

In *Leland v. Leland,* 319 Ill. 426, a corespondent in a divorce suit sought to sue out a writ of error to review a decree granting a divorce. The court held that his interest in the subject matter of the suit was not sufficiently direct to authorize such a writ in his behalf, and said: "In the present case the subject matter of the litigation was the marital relations existing between defendant in error and his wife, Charlotte, in which subject matter plaintiff in error had no interest. The only direct result of a decree entered in favor of defendant in error in the cause would be a severance of those relations. Whether or not defendant in error and his wife remain husband and wife or whether they shall be divorced is a matter in which

plaintiff in error can have no direct interest or concern. It is true that he may be injured in his reputation by the evidence in the case or by the finding of the court upon which the decree is based, but such injury is not the direct result of the decree itself.''

Another case supporting the conclusion that the prejudice, if any suffered by the plaintiffs, would be indirect, is *People ex rel. Attorfer v. City of Peoria,* 378 Ill. 572, which was a mandamus suit to compel the issuance of a building permit to the petitioner. The petition was directed against the city and its building commissioner. The court awarded the writ and ordered the building commissioner to issue a permit authorizing the petitioner to build a certain building on his property. Fifty-one neighboring property owners sought to sue out a writ of error to review the judgment on the ground that they had a direct financial interest in the result of the litigation, namely, the erection of the contemplated market on the property of the petitioner would cause great depreciation in the values of their residences. In holding that they did not have a sufficient interest to sue out such a writ, the court said: ''Admittedly, the intervenors do not have any interest in plaintiff's property and it appears that their repeated attempts to intervene constitute a continued effort to change the character of this action from a mandamus action to a suit in equity. The single question presented for decision in the circuit court was the propriety of the denial by the commissioner of buildings of a building permit to plaintiff incident to the proposed use of his property for commercial purposes. The contiguous and neighboring property owners were not necessary parties. As members of the general public they were fully represented by the defendants whose interests, objectives and defenses were precisely the same, namely, sustaining the enforcement of the challenged zoning ordinance. (*Kennedy v. Town of Normal,* 359 Ill. 306.) Such in-

terest as the intervenors may have in the outcome of the litigation is speculative, theoretical, inconsequential and remote rather than a direct, immediate and substantial interest. In contemplation of law, they are not injured by the judgment ordering the issuance of the writ of mandamus.'' See also *Hotchkiss v. City of Calumet City*, 377 Ill. 615; *People v. Lower*, 254 Ill. 306.

We hold the prejudice or aggrievement, if any, sustained by the plaintiffs, was not direct as required by sec. 407, but merely indirect and incidental, and could not serve as a foundation for a petition for review.

Much space is devoted in plaintiffs' brief to the argument that serious consequences will result if plaintiffs are not permitted to take advantage of sec. 407 as aggrieved companies, in that there will be no protection against arbitrary action on the part of the director in issuing certificates of authority without requiring a compliance with the code. The language used by the legislature is plain. It is the safest guide in construing the sections involved. This court has no right to read into the statute words that are not found therein, either by express inclusion or by fair implication. (*Illinois Cent. R. Co. v. Village of South Pekin*, 374 Ill. 431.) The act of the director in renewing the certificate of authority was not judicial. The courts of this State have held that the authority to grant or revoke a license by an executive officer without any provision for judicial review does not violate due process. (*People v. Ryan*, 371 Ill. 597.) The failure of the statute in this case to provide parties situated as are the plaintiffs, a remedy under sec. 407 cannot be aided by judicial interpretation. (*Universal Credit Co. v. Antonsen*, 374 Ill. 194.)

For the reasons indicated the judgment of the circuit court is affirmed.

*Judgment affirmed.*